Document    Page 1 of 15

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re:<br><br>    ANDY LEE and<br>    JENNY LEE,<br><br>                    Debtors. | Case No. 04-12460-RGM<br>(Chapter 7) |
| DONALD F. KING, TRUSTEE,<br><br><br>                  Complainant,<br><br>vs.<br><br>ANDY LEE,<br>JENNY LEE and<br>DAVID LEE,<br><br><br>                  Defendants. | Adv. Proc. No. 04-01327 |

## Memorandum Opinion

This is a fraudulent conveyance suit in which the transferee after having sold the fraudulently conveyed real property to third parties returned the proceeds from the third-party sale to the transferor before the commencement of the bankruptcy case. It is before the court on cross motions for summary judgment filed by the transferee and the trustee. The trustee's motion for summary judgment and the transferee's motion will both be granted in part.

1

## Undisputed Facts

Andy and Jenny Lee, husband and wife, filed a joint voluntary chapter 7 petition in this court on June 7, 2004. David Lee is their son. The debtors owned their home which was secured three deeds of trust granted by them. On May 28, 2002, they transferred the property to David subject to the deeds of trust by a deed titled "Deed of Gift." The Deed of Gift was recorded seven months later on December 20, 2002. David and the debtors resided in the property from 1981 until David sold the property on January 16, 2004, to unrelated third parties for $405,000. The three deeds of trust were paid at closing. After the trusts and the closing costs were paid, David received net proceeds of $156,662.07. Before the end of January, he gave his father $100,000. Shortly after that, he gave his father an additional $40,000 to $50,000 in cash. David's father lost the entire $140,000 to $150,000 gambling before he and his wife filed their joint petition on June 7, 2004.

## Procedural Background

The trustee filed a four-count amended complaint against David and the debtors. The first three counts seek relief only against David; the fourth, only against the debtors. The first two counts seek to avoid the May 28, 2002 transfer of the real property, alleging that it was a fraudulent or voluntary conveyance under Virginia Code (1950) §§55-80 or 55-81 and is avoidable under Bankruptcy Code §544(b). The trustee seeks to recover the value of the transferred property from David as the initial transferee in the third count. Bankruptcy Code §550(a).[1]

---

[1] Count IV of the amended complaint seeks to revoke the debtors' discharge pursuant to Bankruptcy Code §727(d)(1) and is not considered here.

David filed a motion for summary judgment requesting the court enter judgment in his favor on all three counts. He asserts that he returned the net proceeds of sale to the debtors and is entitled to judgment because "[i]t would be unjust and inequitable to now hold [him] liable for funds which were re-transferred to – in the view of the trustee – the rightful owners."[2] Motion for Summary Judgment at 8. The trustee opposes David's motion and filed his own cross motion for summary judgment.

## Discussion

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Here, David's admissions in his answer to the amended complaint and his responses to the trustee's request for admissions entitle the trustee to summary judgment as to the fraudulent conveyance count, but only as to joint claims of both debtors. David is entitled to summary judgment as to individual claims of either his father or his mother.[3]

---

[2] See n.7, below, as to the "rightful owners."

[3] The voluntary conveyance count is moot because the relief granted under the fraudulent conveyance count is broader than any relief that can be granted under the voluntary conveyance count. Fraudulent conveyances under Virginia law are void as to existing and future creditors while voluntary conveyances are void only as to existing creditors. Va.Code (1950) §55-80 and 55-81. *See Balzer & Assocs. v. Lakes on 360, Inc.*, 250 Va. 527, 463 S.E.2d 453 (1995).

The problem with the voluntary conveyance count at this stage of the proceeding is the debtors' solvency or insolvency on May 28, 2002, the date of the conveyance. Section 55-81 of the Virginia Code (1950) requires insolvency on the date of the transfer. There is no evidence in the record of the debtors' solvency or insolvency on May 28, 2002. Insolvency determined as of one date may form the basis for the inference that insolvency existed on another date if the dates are relatively close in time and if no significant transactions occurred between the two dates. *Gold v. Laines (In re Laines)*, Ad. Proc. 04-1052 (Bankr.E.D.Va. 2005) (two years too long, but 78 days acceptable); *In re Fox Bean Co.,Inc.,* 287 B.R. 270, 282 (Bankr.D.Idaho 2002) (three months); *In re Washington Bancorporation,* 180 B.R. 330, 334

(continued...)

## Fraudulent Conveyance and
## Application of Bankruptcy Code §544(b)

Section 544(b) of the Bankruptcy Code permits the trustee to use state law avoidance powers in bankruptcy proceedings. Virginia Code (1950) §55-80 is such an avoidance power. It provides that "[e]very gift, conveyance, assignment or transfer . . . given with intent to delay, hinder or defraud creditors . . . shall. . . be void." Va. Code (1950) §55-80. Intent is often difficult to prove. For this reason, the party seeking to avoid a transfer may establish a prima facie case by proving badges of fraud.

> In the absence of direct and positive testimony, there are many facts and circumstances which the law admits as marks of signs of fraud and from which fraudulent intent may be inferred. These "badges of fraud" include (1) close relationship of the parties, (2) insolvency of the grantor, (3) pursuit of the grantor by his creditors at the time of the transfer, (4) want or inadequacy of consideration, and (5) retention of possession of the property by the grantor.

*In re Claxton*, 30 B.R. 199, 212 (Bankr.E.D.Va. 1983) (citing *Hutcheson v. Savings Bank of Richmond*, 129 Va. 281 (1921)). "Once a party has established a *prima facie* case . . . the burden of producing evidence to rebut the *prima facie* case shifts to the opposing party." *Balzer and Associates, Inc. v. The Lakes on 360, Inc.*, 250 Va. 527, 533, 463 S.E.2d 453, 457 (1995).

The trustee established a prima facie case of fraud. David and his parents retained possession of the property conveyed. They lived in the property for 21 years before the conveyance

---

[3](...continued)
(Bankr.D.D.C. 1995) (applying retrojection); *Mancuso v. T. Ishida USA, Inc. (In re Sullivan),* 161 B.R. 776, 783 (Bankr.N.D.Tex. 1993) (six months before and six months after); *In re Ohio Corrugating Co.,* 91 B.R. 430, 437 (Bankr.N.D.Ohio, 1988) (16 days); *In re Uhlmeyer,* 67 B.R. 977, 980 (Bankr.D.Ariz. 1986) (two months). *But see In re War Eagle Floats, Inc.,* 104 B.R. 398, 400 (Bankr.E.D.Okla. 1989) (six months is too long). The time period between May 28, 2002, the date of the conveyance, and May 21, 2004, the date the schedules and statement of financial affairs were signed, is too long to use the schedules and statements of affairs as the basis for an inference of insolvency at the earlier transfer date. Moreover, with known gambling losses between January 16, 2004, and June 7, 2004, the existence of significant transactions between May 28, 2002 and May 21, 2004 that could affect the debtors' solvency cannot be excluded.

and continued to live there until David sold the property on January 16, 2004. Affidavit of David Lee, ¶2. They concealed the May 28, 2002 transfer by withholding the deed from recordation for seven months. *See* Amended Complaint, ¶9 incorporating Ex. E, Deed of Gift with date of recordation, and Answer of David Lee, ¶9 admitting deed. David never assumed the three deeds of trust encumbering the property. He only took the property subject to them, an indication of the absence of an arms-length transaction. The debtors were under great financial stress when they conveyed the property to David. David knew of his parents' financial distress at that time. He knew his mother had stopped working because of illness and that his father was "making little income." Affidavit of David Lee, ¶2. He knew that his parents were unable to pay the mortgage and made payments on their behalf. He paid their personal expenses.

David argues that he did not know of his parents' fraudulent intent or all the details of their financial circumstances. But, the knowledge that he admits is more than sufficient. He need not know all of the intimate details of their financial circumstances.

> [I]t is not necessary to prove that the grantee had positive knowledge of the grantor's fraudulent intent. It is sufficient to prove that the grantee had knowledge of facts and circumstances which were naturally and justly calculated to excite suspicion in the mind of persons of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction, and that such inquiry would have necessarily led to a discovery of the facts from which the law imputes fraud to the grantor.

*Hutcheson v. Savings Bank of Richmond,* 129 Va. 281, 291, 105 S.E. 677, 681-82 (1921). David's knowledge is brought home by his assertion that the support he provided his parents before the conveyance was part of the consideration for the conveyance as was his alleged promise of future support. The debtors' past need for financial support and their anticipated future need for further financial support demonstrate their precarious financial circumstances. David's provision of that

support demonstrates his knowledge of their plight. The uncontested facts firmly establish David's knowledge of facts that would have caused a person of ordinary care and prudence to have inquired further. The inquiry would have led to discovery of all the facts surrounding the transaction, facts that impute fraudulent intent to his parents.

The badges of fraud – the overwhelming debt, the debtors' inability to pay their debts, the retention of possession, the family relationship between the parties, the concealment of the transfer, the absence of fair consideration and the absence of an arms-length transaction – together establish a prima facie case of fraud which shifts the burden of going forward to David. *Hutcheson,* 129 Va. at 291, 105 S.E. at 681.

David failed to meet his burden of producing evidence to rebut the trustee's prima facie case.[4] *Balzer and Associates, Inc. , supra.* He maintains that the house was transferred to him because he was paying the mortgage and promised to support the debtors. Even if David paid the mortgage and other expenses before the conveyance or promised to support his parents after the conveyance, he failed to show that his payments of past support and his promises of future support were equivalent in value to the property he received. He received $156,662.07 from the January 16, 2004 sales, an indication of the value he received from the May 28, 2002 transfers to him. *See Hyman v. Porter (In re Porter)*, 37 B.R. 56, 64-65 (Bankr.E.D.Va. 1984) (finding fraud where the transferees failed to prove that adequate consideration was paid for the transfer); C.J. Patrinelis, *Assumption of Mortgage as Consideration for Conveyance Attacked as in Fraud of Creditors*, 6

---

[4]In *Celotex*, the Supreme Court explained that "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion . . . therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

A.L.R.2d 270 at two (2003) (explaining that assumption of a mortgage is insufficient consideration to support the transfer of a deed where the disparity between the value of the property and the value of the mortgage "is such as to 'shock the conscience of the court.'"). Moreover, a promise of future support is insufficient consideration to uphold a conveyance if it prejudices existing creditors. *See The Nat'l Valley Bank of Staunton v. Roudabush*, 170 Va. 528, 533-534, 197 S.E. 484, 486 (1938) (promise to support the grantor not valid consideration as to existing creditors of the grantor); *Henderson v. Hunton*, 67 Va. (26 Gratt.) 926 (1875); *Hanna v. Charleston Nat'l Bank*, 55 W.Va. 185, 46 S.E. 920 (1904) (grantee's promise to support the grantor as consideration for a transfer of property "is a continuing fraud," and "[t]he void character of [such a] deed cannot be cured by showing the grantee had afterwards assumed and paid debts to the full value of the property conveyed.").

However, there is an important limitation on the fraudulent conveyance analysis under Va.Code (1950) §55-80, although it is not a limitation under Bankruptcy Code §548(a)(1)(A).[5] Under Virginia law, a transfer of tenants by the entirety property to one spouse even with the requisite fraudulent intent, is not a fraudulent conveyance as to the creditors of the other spouse. *Oliver v. Givens,* 204 Va. 123, 129 S.E.2d 661 (1963); *Vasilion v. Vasilion,* 192 Va. 735, 743, 66 S.E.2d 599, 604 (1951). *Cf. Tavenner v. Smoot (In re Smoot),* 257 F.3d 401(4th Cir. 2001). The Virginia Supreme Court succinctly explained this rule: "creditors are not prejudiced by a gift of property which is exempt from their claims." *Oliver v. Givens,* 204 Va. at 127, 129 S.E.2d at 664. *See also In re Nagel,* 298 B.R. 582 (Bankr.E.D.Va. 2003); *Phillips v. McCullen (In re McCullen),*

---

[5]Bankruptcy Code §548(a)(1)(A) is not at issue in this case because the May 28, 2002 transaction occurred more than one year before the filing of the petition in this case.

244 B.R. 73 (Bankr.E.D.Va. 1999); *In re Massey,* 225 B.R. 887 (Bankr.E.D.Va. 1998); *In re Zella,* 196 B.R. 752 (Bankr.E.D.Va. 1996) *aff'd* 202 B.R. 712 (E.D.Va. 1996).

The rationale of *Oliver v. Givens,* that "creditors are not prejudiced by a gift of property which is exempt from their claims," has no application where the property is not exempt from creditors' claim. Tenants by the entirety property is not exempt from the claims of joint creditors of both husband and wife. *Bunker v. Peyton (In re Bunker)*, 312 F.3d 145, 150-151 (4th Cir. 2002); *Williams v. Peyton (In re Williams)*, 104 F.3d 688 (4th Cir. 1997); *Sumy v. Schlosberg*, 777 F.2d 921 (4th Cir. 1985). A fraudulent conveyance of tenants by the entirety property is avoidable by creditors who are joint creditors of both spouses, but not by creditors of either the husband or the wife. In this case, the trustee is entitled to avoid the May 28, 2002 transfer from the debtors as tenants by the entirety to their son, David, as to joint creditors, but not as to individual creditors. Individual creditors of either debtor were not prejudiced by the transfer, but joint creditors were.

**Recovery of the Property or the Value of the Property
under Bankruptcy Code §550**

Having determined that the transaction may be avoided as to joint creditors, the next task is to determine what the trustee may recover and from whom. There are two parties from whom the trustee could seek recovery: David and David's purchasers. There are two possible recoveries: the property and the value of the property. Bankruptcy Code §550(a).

The trustee did not seek to recover the property from David's purchasers. David's purchasers are David's immediate transferees. The trustee's right to recover from them is governed by §550(a)(2) and (b). The trustee may not recover from immediate transferees if they took "for

8

value . . . in good faith, and without knowledge of the voidability of the transfer avoided." Bankruptcy Code §550(b). There is no suggestion that David's transferees do not fit squarely within this provision of the Bankruptcy Code or that the trustee may recover against them.[6] Since they now hold title to the property in question, the trustee is also unable to recover the property itself. That leaves only David and the recovery of the value of the property conveyed.

The trustee seeks to recover the net proceeds from the sale of the property, $156,662.07, from David. David makes two arguments why he should not be liable. First, he returned all of the profits from the sale of the property before his parents filed their petition. Having returned the money to its original owners, he argues, he should not be liable a second time. *See* Motion for Partial Summary Judgment on Behalf of Defendant David Lee at 3-6. Second, David argues that he is a mere conduit and is not an initial transferee under 11 U.S.C. §550(a). *See* Memorandum on Effect of Section 550(a) at 6.

David asserts in his answer and his affidavit in support of his motion for summary judgment that he gave his father ten checks, each in the amount of $10,000, between January 23 and 29, 2004, and an additional $40,000 to $50,000 in cash sometime later. *See* Answer, ¶¶20-23; Affidavit of David Lee, ¶3-4. His father later lost the money gambling. Affidavit of David Lee, ¶¶3-4. He contends that by returning the proceeds from the sale of the house, the bankruptcy estate was not diminished. The fact that his father dissipated the proceeds is irrelevant because he ought not be responsible for his father's use of the funds once they were returned.

---

[6]The trustee did not seek any relief from them and they are not parties to this suit.

9

Under Virginia law he may be right. *See Price v. Hawkins*, 247 Va. 32, 439 S.E.2d 382 (1994). The critical question under Virginia law is whether the creditor commenced collection actions before the property or its value was returned to the transferor.[7] If the transferee returned it before the creditor commenced collection action, the transferee is not liable. If, however, the transferee returned it after the creditor commenced collection action, the transferee is liable. *Id.* at 39. This, though, is not an action under the Virginia Code but under the Bankruptcy Code. Although §544(b) allows the trustee to utilize state law to avoid a transfer, here Va.Code (1950) §55-80, the liability of the transferee of an avoided transfer is determined under the Bankruptcy Code, not the Virginia Code. Section 544(b), which permits recourse to state law, provides the basis for the trustee's avoidance of the transfer. Section 550 provides the remedy. It sets out from whom the trustee may recover and the defenses to recovery.

The liabilities of transferees and their protections under §550 are similar, but not identical, to those under state law. Under the Bankruptcy Code, once a transfer is avoided under §544, 545, 548, 549, 553(b) or 724(a) "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer." Bankruptcy Code § 550(a)(1). Section 550 differentiates between initial transferees and immediate and mediate transferees. Initial transferees are held strictly liable. *See In re Southeast Hotel Properties*, 99 F.3d 151, 154 (4th Cir. 1996). "The initial transferee of an avoided

---

[7]The court does not agree that David returned the money to the "rightful owners." The owners of the real property were his father *and* his mother, as tenants by the entirety with the common-law right of survivorship. As tenants by the entirety, neither individually had the power to sell the property, encumber it or dispose of the proceeds of sale. *In re Cordova,* 73 F.3d 38, 42 (4th Cir. 1996). The "rightful owners" were both his father and his mother. David turned the money over to only one of the tenants by the entirety. Had David returned the funds to his parents in the tenants by the entirety form in which they held the real property before they conveyed it to him, his mother would have had equal control over the funds and could have prevented his father from dissipating them at the gambling table. The decision in this case is not affected by whether David gave the money to his father or to both his father and his mother.

transfer is strictly liable to the estate, whether it colluded with the debtor or was an innocent and unwitting recipient." *Leonard v. First Commer. Mortg. Co. (In re Circuit Alliance, Inc.)*, 228 B.R. 225, 232 (Bankr.D.Minn. 1998). By contrast, "[a] subsequent transferee, mediate or immediate, may avoid liability upon a showing of status analogous to that of a bona fide purchaser." *Id. See also Rupp v. Markgraf*, 95 F.3d 936, 938 (10th Cir. 1996) (explaining that, "the trustee's power to recover under §550(a) is limited by §550(b), which prevents recovery from immediate or mediate transferees of the initial transferee under §550(a)(2) who 'takes for value . . . in good faith, and without knowledge of the voidability of the transfer avoided.'"). Consequently, "the central issue . . . becomes the determination of which party is the initial transferee of . . . [the] fraudulently transferred funds because that party will be held strictly liable." *Leonard*, 228 B.R. at 232.

Section 550 provides no defense to initial transferees and courts will not invoke their equitable powers to circumvent its clear statutory provisions.

> [S]ection 550(a)(1) must be applied as it is drafted . . . . Whatever equitable considerations weigh in favor of [the defendant] are foreclosed by the command of the statute . . . . "Where Congress has crafted an unambiguous comprehensive statutory scheme . . . . we are extremely hesitant to tamper with that scheme by use of vague equitable powers. Section 550(a), read literally, authorizes recovery of voidable transfers from all initial transferees. Congress has made this decision and it is not the role of the court to subvert Congress' bankruptcy policy."

*In re Musurlian*, 97 B.R. 985, 987 (Bankr.W.D.Wis. 1989) (citation omitted). *See also In re Southeast Hotel Properties*, 99 F.3d 151, 157 (4th Cir. 1996); *Bonded Fin. Servs. v. European Am. Bank,* 838 F.2d 890, 894 (7th Cir. 1988); *Meininger v. TMG Staffing Servs. (In re Cypress Rests of Ga., Inc.)*, 332 B.R. 60, 65 (M.D.Fla. 2005). Thus, under bankruptcy law, if David is the initial transferee, he may not avoid liability by returning the tainted money to the debtors, whether before or after a creditor commenced collection activity.

David's second argument is that he is not the initial transferee only a mere conduit. The Fourth Circuit recognized the distinction between initial recipients and initial transferees. *Huffman v. Commerce Security Corp. (In re Harbour)*, 845 F.2d 1245, 1256 (4th Cir. 1988). *See also Bonded Fin. Servs. v. European Am. Bank,* 838 F.2d 890, 894 (7th Cir. 1988) (applying the dominion and control test to distinguish initial recipients from initial transferees). In *Huffman*, the Court of Appeals stated that "the initial recipient of a payment may not always be an 'initial transferee' for purposes of section 550(a)(1)." *Huffman*, 845 F.2d at 1257. The court noted that commercial entities are more likely to qualify for "mere conduit" status because the "the likelihood of bad faith on the defendant's part is lessened where the defendant is a commercial enterprise handling transactions in a routine fashion." *Id.*

More recently, in *In re Southeast Hotel Properties*, 99 F.3d 151 (4th Cir. 1996), the Fourth Circuit clarified that the applicable rule distinguishing initial recipients from initial transferees is the legal dominion and control test established by the Seventh Circuit in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988). Under the dominion and control test, an entity is an initial transferee if (1) the debtor relinquishes control of the property to the entity, and (2) the entity exercises full dominion and control over the property. *See Rupp v. Markgraff*, 95 F.3d 936, 942 (10th Cir. 1996). By contrast, a party is not "an initial transferee if it is merely an agent who has no legal authority to stop the principal from doing what he or she likes with the funds at issue." *In re Hurtado*, 342 F.3d 528, 534 (6th Cir. 2003). *See also Rupp*, 95 F.3d at 941 ("The term 'transferee' must mean something different from 'possessor' or 'holder' or 'agent,' or 'anyone who touches the money'") (citations omitted). *See also Meininger v. TMG Staffing Servs (In re Cypress Rests of Ga., Inc.)*, 332 B.R. 60, 64 (M.D.Fla. 2005). However, "[a]n entity does not have to be a

financial institution to be a conduit where the entity receives transferred funds subject to precise disbursement instructions from the transferor." *Id.*

Courts hold that agents of the debtor, such as financial institutions holding funds on behalf of a client, are not liable under §550 if they do not have the power to use the transferred funds for their own purposes. *See e.g., Bailey v. Big Sky Motors (In re Ogden)*, 314 F.3d 1190 (10th Cir. 2002) (escrow agent is financial conduit and not a transferee); *Christy v. Alexander & Alexander Inc. (In re Finley, Kumbler, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52 (2nd Cir. 1997) (insurance broker was not the initial transferee where it immediately transferred the debtor's funds to the insurance company); *Security First Nat'l Bank v. Bruson (In re Coutee)*, 984 F.2d 138 (5th Cir. 2000) (law firm that held money in trust for the debtor was not the initial transferee). By contrast, creditors of the debtor who receive payments from the debtor are held liable as initial transferees because they possess the power to use the funds for their own purposes. *See e.g., Bailey v. Big Sky Motors (In re Ogden)*, 314 F.3d 1190 (10th Cir. 2002); *Keller v. Hoyle, Morris & Kerr (In re Blinder, Robinson & Co.)*, 199 B.R. 976 (D.Colo.1996). Similarly, family members who receive funds from the debtor are initial transferees unless they lack legal dominion and control over the property. *See e.g., In re Hurtado*, 342 F.3d 528 (6th Cir. 2003) (debtor's mother liable because she held legal title over the funds in her bank account, notwithstanding the fact she only distributed the funds according to her son's desires); *Nelmark v. Helms*, 2003 U.S. Dist. LEXIS 3664 (N.D.Ill. Mar. 11, 2003) (debtor's daughters liable because they were insiders who commingled the funds with their own, even though they held the funds for the sole benefit of the debtor and ultimately returned the funds to the debtor or others at his direction). *Cf. Davis v. Davenport*, 147 B.R. 172

(Bankr.E.D.Mo. 1992) (debtor's son was not held liable for funds transferred into his bank account because the debtor maintained control over the account).

In this case, David is not a "mere conduit". Assuming there was a valid and enforceable support agreement, the consideration the debtors paid David for his promised future support – the transfer of the house – was David's to do with as he saw fit. He held title to the property in his own name. He was not legally obligated to hold either the property or the proceeds from the sale of the property for the benefit of the debtors. He could have used the property as he saw fit and spent the proceeds as he saw fit. The debtors had no legal recourse against him for the manner in which he used the property or the proceeds from sale. He did not hold the house in trust for the debtors. He only owed them, he argues, future support.[8] If he breached the support agreement, they could sue him for his non-performance of the support agreement, but they had no claim to the property. They could not have compelled him to turn over the proceeds of sale in January 2004. He did that voluntarily, not out of obligation. The financial conduits and financial intermediaries discussed in the cases could have been held liable had they misused their clients' funds for their own purposes. David could not. Thus, he had dominion and control over the property and the sales proceeds and is an initial transferee.[9]

---

[8] The debtors did not disclose the alleged agreement for future support in their schedules.

[9] David also argues that he is a mere conduit because he acted in good faith when the debtors transferred the house to him. *Huffman v. Commerce Security Corp. (In re Harbour)*, 845 F.2d 1254 (4th Cir. 1988). *Huffman* does not support his argument. In that case, the debtor fraudulently transferred money to his friend using a third party, the friend's mother, as a conduit. *Id.* The court held the mother liable as an initial transferee because she was a "willing dupe" and had not acted in good faith. *Id.* at 1258. *Huffman* did not hold that an entity that would otherwise constitute an initial transferee could be granted "mere conduit" status if the entity acted in good faith. Rather, the court held that "if a defendant who is the initial *recipient* of funds asks the court on essentially equitable grounds to declare that the defendant is not an 'initial transferee' under section 550(a)(1), then clearly this defendant must not have acted inequitably, *i.e.*, in bad faith." *Id.* at 1257. Lack of bad faith is only one requirement for "mere conduit" status. *In re Southeast Hotel Properties* makes clear that the absence of dominion and control is also required. In any event, David did not act in good
(continued...)

14

**Conclusion**

The record reflects no genuine dispute as to any of the material facts establishing the trustee's right to avoid the May 28, 2002 transfer of the real property from the debtors to David as to joint creditors of both debtors. However, the record does not establish the extent of joint creditors, if any. Partial summary judgment will be granted to the trustee avoiding the May 28, 2002 transfer as a fraudulent conveyance but only to the extent of joint creditors. Partial summary judgment will be granted to David as to the remaining issues. The matter will be set for a hearing on the existence and the extent of joint creditors and judgment will be entered against David to the extent of joint creditors but not exceeding $156,662.07.

Alexandria, Virginia
February 7, 2006

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

copy electronically to:

Donald F. King
John P. McGeehan
David E. Jones

12565

---

[9](...continued)
faith because of his knowledge of his parents' circumstances. *See Huffman*, 845 F.2d at 1258 (defendant's "wilful ignorance in the face of facts which cried out for investigation may not support a finding of good faith").